Estate of Louise Amthauer Schneller, Deceased, James T. Dewan, Adm. de Bonis Non with the Will Annexed, et al. [1] v. Commissioner. Estate of Schneller v. Commissioner
Docket Nos. 56049, 56094, 56741, 56750, 56754. 1959-152.
United States Tax Court
T.C. Memo 1959-152; 1959 Tax Ct. Memo LEXIS 97; 18 T.C.M. (CCH) 654; T.C.M. (RIA) 59152; July 24, 1959
Frank J. Riechter, Esq., James T. Dewan, Esq., Mercantile Library Building, Cincinnati, O. Robert N. Gorman, Esq., John D. Brown, Esq., for the petitioners. J. Pitts Vick, Esq., and Clarence E. Price, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion These proceedings, consolidated for hearing involve estate tax liabilities and additions to tax for fraud determined against the estates of Fred Schneller, Deceased, and Louise Amthauer Schneller, Deceased, and Louise Amthauer Schneller, Deceased, and transferee liabilities of the Estate of Louise Amthauer Schneller for estate taxes and additions to tax due from the Estate *98 of Fred Schneller, and of Stanley Gordon for the estate taxes and additions to tax due from both estates. In the Estate of Fred Schneller, Deceased, Docket No. 56741, there has been determined an estate tax deficiency of $39,711.83, and additions to tax of $26,328.96; and in the Estate of Louise Amthauer Schneller, Deceased, Docket No. 56049, an estate tax deficiency of $257,985.58, and additions to tax of $141,755.50. Some of the issues raised have been settled by the pleadings, or by stipulation or by concessions made at the hearing, or on briefs, and will be given effect in the Rule 50 computations. The issues remaining for determination, other than those relating to transferee liability, are as follows: Estate of Fred Schneller 1. Whether the decedent at the date of his death was the owner of municipal bonds of a value of $248,308, includible in his gross estate. 2. Whether the accrued interest on these bonds in the amount of $2,622.46 is includible in the gross estate. 3. Whether there was a balance due the decedent from Bohmer-Reinhart & Company in the amount of $18,372.44, representing matured bonds and matured coupons at the date of decedent's death which is includible *99 in the gross estate. 4. Whether the estate tax return was false and fraudulent within the meaning of section 3612, Internal Revenue Code of 1939. Estate of Louis Amthauer Schneller 1. Whether the decedent at the date of death was the owner of certain bonds of a value of $339,500 which are includible in her gross estate. 2. Whether the accrued interest on such bonds amounting to $3,446.72, at the date of death is includible in the gross estate. 3. Whether the decedent was the owner at the time of her death of a one-half interest in a partnership known as S. Gordon & Company of a value of $32,886.27. 4. Whether there were trust funds held by Stanley Gordon in the amount of $100,000 for the benefit of decedent's relatives which are includible in her gross estate. 5. Whether gifts made by decedent during her lifetime to Stanley Gordon in the amount of $61,600 were made in contemplation of death and are includible in her gross estate. 6. Whether decedent's estate tax return was false and fraudulent within the meaning of section 3612 of the Internal Revenue Code of 1939. In addition to the above, there are further issues of whether the estate of Louise Amthauer Schneller *100 is liable as transferee for any estate taxes and additions to tax due from the estate of Fred Schneller, and whether Stanley Gordon, individually, is liable as transferee for the estate taxes and additions to tax due from both estates. In the findings of fact shown below we have found only those facts pertaining to the questions at issue and have omitted all facts pertaining to the matters settled by the pleadings, stipulations, or concessions. Findings of Fact The decedent, Fred Schneller, died October 28, 1949, a resident of Cincinnati, Ohio. A Federal estate tax return was filed on behalf of his estate with the collector at Cincinnati on February 9, 1950. The return showed a gross estate of $240,879.51, and a tax due thereon of $8,006.58. Respondent determined a deficiency against the estate of $4,935.51, which was agreed to and paid by the executrix in April 1951. The deficiency resulted, primarily, from increasing the reported value of 166 shares of Schneller Agencies, Inc., from $190 to $220 per share, and including in the estate, as a gift in contemplation of death, 82 of such shares which decedent had transferred to Louise Amthauer Schneller in 1948. After further investigation *101 of the estate tax return, respondent, in December 1954, determined an additional estate tax deficiency of $39,711.83, and an addition for fraud of $26,328.96. The notice of deficiency dated December 10, 1954, showed the following adjustments: Net estate for basic tax as disclosed by return
$ 14,490.00
Additions to value of net estate: (a) Real estate
$ 2,500.00
(b) Stocks and Bonds
275,529.44
(c) Jointly-owned property
5,233.42
(d) Other misc. property
23,592.04
(e) Transfers during decedent's life
18,860.00
327,714.90
Total
$340,204.90
Increase in deductions: (f) Debts of decedent
$ 1,376.62
(g) Net amount deductible for bequests
to surviving spouse
162,169.14
163,545.76
Net estate for basic tax as adjusted
$176,659.14
Net estate for additional tax as adjusted
$216,659.14
Fred Schneller was for many years a resident of Cincinnati, Ohio, and was a leading figure in the predominant political party in that city. He served as a member of the Cincinnati board of elections from 1922 until the day of his death. He also owned and operated an insurance company under the name of Schneller Agencies, Inc., which was organized in 1936. *102 After the death of his first wife, Fred Schneller, in 1943, married Louise Amthauer, hereinafter called Louise Schneller, who for a number of years had been his personal secretary and secretary of Schneller Agencies, Inc. She received a salary of $3,600 from Schneller Agencies, Inc. During his lifetime, and beginning in about 1921, Fred Schneller from time to time made extensive investments in municpal bonds. Accounts through which the bonds were bought and sold were maintained at the Cincinnati brokerage firm of Bohmer-Reinhart & Company. The accounts were all conducted under fictitious names as follows: F. S. Eldridge; Mrs. L. A. Tyler; Mrs. L. A. Shelby; F. S. Hargroves; Fred Adams; J. Smith; F. S. Belmont; J. Brown and F. S. Morgan. Some of the transactions in the accounts were handled by Fred Schneller personally and some by Louise Schneller. Usually, transactions in the Mrs. L. A. Tyler and Mrs. L. A. Shelby accounts were handled by Louise Schneller, personally, and those in the other accounts by Fred Schneller. The J. S. Smith account was used by both. They would sometimes come in together and make identical purchases in two of the accounts. There was one account in their *103 joint names, but it showed only one entry made in 1923. There was also an account in the name of Louise Schneller with only one entry, a sale by her in 1952. There were 252 bonds purchased in these fictious accounts at Bohmer-Reinhart & Company by Fred and Louise Schneller of a total par value of $248,308. Bonds of a par value of $10,000 were purchased by Louise Schneller in the Mrs. L. A. Tyler account a few months after the death of Fred Schneller. Fred Schneller and Louise Schneller rented several safety-deposit boxes at Cincinnati banks. Louise Schneller rented box no. 864 at the Provident Savings Bank & Trust Company in the name of Florence Amthauer on September 15, 1919, and box no. 1065 at the Central Trust Company under the same name on July 1, 1944. Fred Schneller was authorized to enter both of these boxes. Fred Schneller rented box no. 863 at the Central Trust Company on January 6, 1947, and box no. 8162 at Central Trust Company under the name of Schneller Agencies, Inc., on January 6, 1947. Louise Schneller was given power of attorney to enter both of these boxes on October 20, 1948. Fred Schneller also rented box no. 1075 at Central Trust Company which Louise Schneller *104 was not authorized to enter. Fred Schneller died October 28, 1949, leaving a will in which Louise Schneller was named his sole beneficiary and executrix of his estate. The will was probated in Hamilton County, Ohio. After his death municipal bonds of a face value of $226,343.17 were found in his safety-deposit box no. 1075 at Central Trust Company and were reported in his estate tax return. These were the only bonds reported in the return. They were identified as bonds which were purchased through the fictitious Bohmer-Reinhart accounts. After Fred Schneller's death, Louise Schneller continued to conduct the affairs of his estate with the advice and assistance of Stanley Gordon. She became president of Schneller Agencies, Inc., at a salary of $6,000 per annum. Gordon was elected treasurer of the company in July 1950. Louise Schneller and Gordon were lifelong friends. After her marriage to Fred Schneller, their association was not as close as it had been, because of bad feeling between Fred Schneller and Gordon. After Fred Schneller's death she and Gordon were in daily contact and spent considerable time discussing her own business affairs and those of the Estate of Fred Schneller. *105 Gordon had a key to her apartment. It was the practice of brokerage firms such as Bohmer-Reinhart & Company to maintain a service relationship with their regular bond customers in which they kept a record of all purchases, sales, and other transactions involving bonds, and notified the customers of the maturity date of bonds and coupons. Early in 1951, Louise Schneller ceased active trading in her own name, and in the fictitious names which she and Fred Schneller had been using in their accounts with Bohmer-Reinhart & Company, and notified the firm that Gordon would be handling her business affairs. Thereafter, Bohmer-Reinhart & Company would notify Gordon of the maturity of coupons or of bonds purchased through any of the accounts in which Fred Schneller or Louise Schneller had been trading. Soon after the death of Fred Schneller, Stanley Gordon opened an account at Bohmer-Reinhart & Company under the fictitious name of "George Mardell." The first entry shown on the card records in that account was April 25, 1950. The records of Bohmer-Reinhart & Company show a great number of transactions conducted by Gordon in the Mardell account over the 1950-1954 period. They consisted of *106 the purchase and sale of municipal and U.S. Government Bonds and the cashing of matured bonds and coupons. The records do not show the identity of the bonds from which the coupons were detached, but, some of the matured coupons which Gordon presented to Bohmer-Reinhart & Company were identified as coming from the same bonds that had been purchased through Bohmer-Reinhart & Company under the fictitious names used by Fred and Louise Schneller. In addition to the George Mardell account at Bohmer-Reinhart & Comany, Gordon had two other accounts, one under the name of George Mardell and one under the name of Mardell Realty Company, at Einhorn & Company, another brokerage firm in Cincinnati, and still another account in the name of George Mardell at the Provident Savings Bank & Trust Company of Cincinnati. Bonds were purchased or sold and coupons cashed through some or all these accounts. During the period 1950 through March 1954, coupons were cashed by Gordon of $29,075.93 in the Bohmer-Reinhart & Company accounts and $14,702.25 in the Einhorn & Company accounts. During 1950 and 1951, Louise Schneller wrote almost daily to a lifelong friend. Jacob Smith, of Buffalo, New York. She had *107 maintained a very close relationship with Smith for a number of years. After the death of Fred Schneller she and Smith spent several days together at different times in Chicago, Milwaukee, and Cleveland. She often discussed her business affairs with him and sought his advice. The letters which she wrote to Smith were long and chatty, and often quite intimate. There were frequent references to events in her life and to her business affairs. The following are a few excerpts from letters written on the dates shown. "November 16, 1950 "It's a darn shame things had to take the turn with me they have, to curtain my holdings, for God knows how long. Imagine not being able to get your own coupons, just for fear - and not being able to take an investigation, which could, and I would be a Happy Hooligan no doubt, and wind up with the works. So, I just sit and wait, and wait, and if I can't outsit this one, then my heirs in due course will probably cash in. * * *
"By the time all of my affairs get fixed up properly, there will be no U.S. comeback, either, he will have saved me, both in taxation and penalties, National, State and County, no less than $75,000.00 if not more. Isn't that *108 something? * * * "I wish you knew Stanley, you both are brainy and I think in many things see eye to eye; he is honest as can be, but shrewder than shrewd and can get around the mountain, so it seems. He is now getting ready to study all the new laws, which he says is criminal, but feels he will find a way." "February 15, 1951 "When his dad died 10 or more years back, taxes were not so rugged as of now, but he had had his father build up with insurance and annuities to protect his mother, sister, and one N. G. Bro. who had to be tied up some way (gambled every cent away) to assure him an income, and he handled the whole matter nobody but he and I know actually the amt. (aplenty) and not one dime of taxes. Govt. looked and looked and looked. Don't know how it's done but it is, and he studies every tax move that is made, and I believe keeps a couple of steps ahead of them. He has had govt. tax men ask him for aid, which he ducks, not wanting to put them wise, nor tip his mit, but in a general sense does help a little, in a way, that won't infringe on his patents, as it were." In their investigation of the matters here under consideration, the Commissioner's agents were able to *109 locate or trace some, but not all, of the bonds purchased through fictitious accounts of Fred Schneller and Louise Schneller and the Mardell accounts at Bohmer-Reinhart & Company, which were allegedly omitted from the estate tax returns of the Fred and Louise Schneller estates. Of the 252 bonds purchased in the fictitious accounts of a total par value of $248,308 which respondent has determined were fraudulently omitted from the Fred Schneller estate, 109 bonds of a par value of $108,000 have never been traced since their purchase. Some of the bonds, $16,000 par value, were sold in Canada by William Medofsky. Medofsky was a used car dealer in the Cincinnati area. He and Gordon were old friends and had a distant family relationship. Medofsky made one trip to Canada with the bonds in September 1954 and one early in 1955. Along with the bonds was also a package of matured coupons which were disposed of in Canada. Medofsky gave Gordon the proceeds of these sales after deducting certain fees and expenses incurred in the transactions. Some of the bonds were found to have been used as collateral for loans, or to have been cashed, by friends of Gordon described as "handicappers" or gamblers. *110 Some were found to have been sold in Cincinnati under the name of a deceased gambler. Some were found to have been sold or used as collateral by rabbis or officials of Jewish organizations who had obtained them from Gordon or from the rabbi of the synagogue to which he belonged in Cincinnati. Bonds of a face value of $43,000 were found in Gordon's safety-deposit box. During 1950, 1951, and 1952, Louise Schneller was suffering from a "heart condition" and was under the constant care of a physician. Frequent references to her state of health were made in her letters to Jacob Smith. In some of these letters she told about "excruciating muscle cramps" and other troubles related to "poor circulation." Following are excerpts taken from those letters. "March 26, 1951 "Doc apologized today late - (7:30 A.M.) My bl pr was good over 78 and chest just grand. Said it was just about where I was 2 yrs. ago. But cautioned against exertion. I told him the very slight hill from grocery to here, I had to stop and wait at least once or twice. He said 'effort' & I said, well dont I have to walk a little, wont I get muscle bound? 'No' you live like an oyster & just watch this muscle, indicating *111 my heart. He said, barring anything unforseen at this time, you are good for a long stretch, but dont get fresh for you could undo it all in 24 hrs. You have scar tissue, uneven beat & murmer, which will always be there to help carry you off. So watch yourself." "June 7, 1951 "Today bl. pr 160/86. Doc was satisfied, gave me a water shot (which I though was too close to the last one, he though not, but I did not eliminate as much as any other time, which I think proved my point, and I weighed myself, 147, which is almost my lowest, 145 has been reached, but in the course of a few weeks, its back to 155 or 160 depending how I weigh, stripped or dressed. My shoes run up 3 or 3 1/2 lbs. I know. "A couple of hours later, I developed those excruciating muscle cramps, (I had a bad spell in M. if you recall). This day, both shins, started. Some people get relief, by walking on cold, with me its just the opposite, something hot, and I walk around a bit in slippers, trying to restore circulation it acts like it is getting better, and as soon as I stop, starts up again. I bot since Fred passed away, an enamel dish pan and a rubber mat to place it upon, and keep it in the bathtub, (I use *112 the shower, he the other) and when these attacks come on, I fill it with as hot water (tub) I can stand, and bathe one or both feet in same. Today, as I wanted to put in both feet, and forgetting to get a straight chair from front bed r. took the bath stool, lower, and when I tried to put in the right leg, didnt I get another cramp (still have the 1st in leg bet. knee and thigh), and it even cramped my intestines on that side. I have had these spells before, and now and then he gives me some shot for that, so Mon. will tell him, and probably get a shot or two to straighten that out. "Once or twice, when I had a regular package, and carried it in my arm, the arm would start to cramp, but if I held the pkge. with arm straight down, nothing happened. All poor circulation. Then part of this afternoon, one of my ears was 'off' felt stopped up, its a uncomfortable situation, but something one has to bear with. My uncle wrote me 'not to get old' I wish he would dig up some recepe to prevent it." Louise Schneller died April 26, 1952, at the age of 70. She left a will in which she made specific bequests, either outright or in trust, of fractional portions of her estate to a number of relatives *113 and friends and named Gordon as her sole executor. The bequests included 3-1/10 interests in the estate; 3-1/25 interests; 6-1/15 interests; and 13-1/100 interests. She gave a 1/25 interest to Gordon and 5/100, the residue, of her estate to his wife, Selma B. Gordon. The estate tax return filed for her estate reported a gross estate of $204,079.10 and an estate tax liability of $25,525.41. The reported assets included stocks and bonds of a value of $99,736.95. They also included a debt due from Stanley Gordon of $98,450, which was "forgiven" by decedent in her will. This return was filed by Gordon who served as executor of the estate until January 1955 when he was replaced by the present administrator. After the death of Louise Schneller the Commissioner's agents found among the effects of her estate, stored in the basement of Gordon's furniture store, a record which Fred Schneller had kept in his own handwriting of bond purchases. It listed a total of 202 bonds of the aggregate par value of $200,000, including some but not all of the bonds purchased in the fictitious accounts of Bohmer-Reinhart & Company. It did not list any of the bonds which were reported in Fred Schneller's estate *114 tax return. In her letters to Jacob Smith, Louise Schneller made reference to the S. Gordon & Company furniture business, indicating that she was a partner in that business. Following are excerpts from some of the letters. "December 25, 1950 "* * * Gordon is so elated as to our new business is finishing in the black, to the tune of a few hundred bucks. He thought the 1st year would see us still in the red. He says, if this war would not interfere, even in one year from now we would profit (split 50-50) $50,000.00, but with conditions as they are, he said we cannot do worse than $15,000.00 profit. He sure knows his stuff, and right after the 1st wk. of New Year has to go to Chicago, to furniture market. "February 13, 1951 "* * * Has me diversified between this business, (mdse) which is like money in the bank, property Apts. (small) duplex & business property & houses, 2 farms, stocks and bonds. "March 26, 1951 "* * * Stan is only partner to the profits in our new business, real estate, & farm but other than salary ( $500 per mo) in Insurance, nothing else there & no stock div. or bond coupons. All mine what wont go over to the new business." The assets reported in the *115 Louise Schneller estate tax return did not include any interest in the S. Gordon & Company furniture business. Respondent has added to the estate $32,886.27, representing the value of Louise Schneller's one-half partnership interest in the business. He has determined that this amount was fraudulently omitted from the return and, further, that Gordon converted the asset to his own use after the death of Louise Schneller and is, therefore, liable as transferee in respect thereof. During her lifetime Louise Schneller made cash gifts to Gordon amounting to $38,000 in 1950; $8,000 in 1951; and $15,600 in 1952. These gifts were reported in gift tax returns filed by the donor in respect of the 1950 and 1951 gifts and by Gordon as executor of her estate in respect of the 1952 gift. In the 1950 return, the donor claimed a specific exemption of $30,000 and an exclusion of $3,000. One exclusion of $3,000 was taken in each of the 1951 and 1952 returns. The returns showed gift taxes due of $112.50 for each of the years 1950 and 1951, and $1,215 for 1952. The above-described gifts which Louise Schneller made to Gordon in 1950, 1951, and 1952, in the aggregate amount of $61,600 were made in contemplation *116 of death. Gordon was indicted by a Federal grand jury on December 14, 1955, for filing a false and fraudulent estate tax return for the Louise Schneller estate. At the trial, the court on May 31, 1956, granted a motion for acquittal. Some of the evidence adduced at the trial in the instant proceedings was not discovered until after the trial in the criminal proceeding. The estate tax return filed on behalf of Fred Schneller, deceased, was not false and fraudulent. The estate tax return filed on behalf of Louise Schneller, deceased, was not false and fraudulent. Opinion LEMIRE, Judge: Respondent contends that the estates of Fred Schneller and Louise Schneller, petitioners, in docket numbers 56741 and 56750, are liable for estate tax deficiencies and additions to the tax under section 3612, [2] Internal Revenue Code of 1939. He concedes that in the absence of fraud any additional estate tax due from the Estate of Fred Schneller is barred by the statute of limitations. *117 The evidence of record, we think fails to establish fraud. The fraud question in both the Fred Schneller and the Louise Schneller estates rests largely on the omission in the decedents' estate tax returns of large amounts of municipal bonds allegedly purchased by them and owned by them at the date of death. For the most part these are the bonds that were purchased by Fred and Louise Schneller over a long period of time under the fictitious names in the Bohmer-Reinhart & Company accounts. The records of Bohmer-Reinhart & Company show the date of purchase, the purchase price, and the name or number of the bond purchased. However, neither those nor any other available records show who actually purchased the different bonds, or whose money they were purchased with, or who were the actual owners. We know that the bonds were all purchased by either Fred or Louise Schneller, but we have no means of determining whether they were purchased by Fred Schneller for his own account or by Louise Schneller as his agent, or whether some were purchased by Louise Schneller with her own funds. It is possible that Louise Schneller used her own money in some of the purchases or that Fred Schneller gave *118 her money for that purpose. There is no evidence as to what funds of her own she may have had. Fred and Louise Schneller are both deceased, and apparently there is no living person who could or would answer these questions. Respondent's allegation of fraud, against the Fred Schneller estate, based on the bond transactions is supported by evidence showing that the bonds in question, or some of them, were purchased by or for Fred Schneller, individually, but there is insufficient proof that they remained his property until the date of death and were fraudulently omitted from his estate tax return. Respondent states in his brief that these facts are clearly shown by the records of Bohmer-Reinhart & Company, the incomplete records of Fred Schneller, and the testimony of May A. McGovern. The records of Bohmer-Reinhart & Company, as we have pointed out, are inconclusive as to the actual ownership of the bonds at the dates of death. The fact that these records show that Fred or Louise Schneller purchased these bonds and that after Fred's death Louise or Gordon cashed some of the bonds and the coupons from them, is not proof that the bonds were owned by Fred Schneller at the time of his *119 death. The incomplete records of Fred Schneller to which respondent refers is the list of bond purchases in Fred Schneller's handwriting which was found in Gordon's possession after the death of Louise Schneller. The list bears no heading or description of any kind. There is no writing to identify it or give any light on its origin or purpose. It does not include all of the bonds purchased by Fred and Louise Schneller in the fictitious accounts at Bohmer-Reinhart & Company nor any of the bonds which were found in the safety-deposit box, no 1075, and reported in Fred Schneller's estate tax return. It does not establish whether Fred Schneller or Louise Schneller purchased or owned the bonds listed. May A. McGovern was cashier and bookkeeper for Bohmer-Reinhart & Company. She testified that Fred and Louise Schneller both purchased bonds in the fictitious accounts, sometimes with matured bonds or coupons, and sometimes with cash, but she did not know, and the firm's records do not reveal, with whose money they were purchased or who was the owner. In the absence of more positive and convincing evidence than that relied upon by respondent, or than appears in the record, we cannot find *120 that any of the bonds in question or other assets belonging to the estate were fraudulently omitted from the Fred Schneller estate tax return. In view of our ruling that the evidence fails to support respondent's allegation of fraud, we do not need to discuss any of the other issues relating to the estate of Fred Schneller or the transferee liability of Gordon in respect of assets of the estate. Estate of Louise Amthauer Schneller Much of the evidence considered in connection with the Fred Schneller estate pertains also to the Louise Schneller estate. It is respondent's contention that some of the municipal bonds purchased through the Bohmer-Reinhart & Company fictitious accounts and belonging to Fred Schneller passed from his estate to Louise Schneller; that they remain her property until the time of her death; and that they were fraudulently omitted from the estate tax return filed for her estate. He contends that there were 243 of such bonds of a par value of $237,500. He further contends that there were omitted from the Louise Schneller estate 24 municipal bonds of a par value of $22,500 which were reported in the Fred Schneller estate, and 71 municipal bonds of a par value *121 of $71,000 which were purchased after the death of Fred Schneller, either by Louise Schneller, personally, or by Gordon acting as her agent through the Mardell accounts. All of these bonds, he contends, were owned by Louise Schneller at the time of her death and were fraudulently omitted from her estate tax return. Even if we were to accept the evidence as establishing that bonds in the amounts claimed by respondent were purchased by Fred Schneller during his lifetime and passed to Louise Schneller at his death and that during her lifetime Louise Schneller purchased other bonds as alleged, we would be unable to find that she owned these bonds at the time of her death. She may have given them away during her lifetime to Gordon or others, or she could have sold them and disposed of the proceeds, or they could have been stolen or otherwise lost to her before her death. As to the issue of fraud, the burden of proof rests on the respondent. (Section 1112, Internal Revenue Code of 1939). The tangible evidence adduced by respondent and the proven chain of circumstances attending the conduct of *122 the parties concerned strongly indicate that there was a planned evasion of Federal estate taxes, and perhaps other obligations, by Louise Schneller and Gordon, and that Gordon masterminded these plans. There is little doubt that he moved in on the Louise Schneller fortune soon after the death of Fred Schneller and dominated the situation until Louise Schneller's death. It would serve no useful purpose here to enter into a discussion of all of the evidence relating to Gordon's activities in connection with the affairs of the estate. The facts set out above reflect the more persuasive elements, but not all of such evidence. As a witness before this Court, Gordon's testimony was at times evasive and inconsistent. Some we suspect was pure fabrication. At best, it was of but little aid to the Court in its task of trying to untangle the maze of concealment and deceit for which he was primarily responsible and which he alone could have explained. What is lacking in the evidence to support respondent's allegation of fraud is clear and convincing proof that assets, particularly the municipal bonds in question, were owned by Louise Schneller at the time of her death and were omitted from *123 her estate tax return. Fraud under the Internal Revenue Code, section 3612 of the 1939 Code, cannot be presumed or deemed established by a mere preponderance of the evidence, but must be proved by clear and convincing evidence. See Henry Kerbaugh, 29 B.T.A. 1014, affd. 74 Fed. (2d) 749 and Estate of Louis L. Briden, 11 T.C. 1095, affd. 179 Fed. (2d) 619. Notwithstanding respondent's failure to sustain his burden of proof with respect to the fraud issue, his determination of the estate tax deficiency against the estate of Louise Schneller is presumptively correct and can be set aside only upon affirmative evidence that it is erroneous. The deficiency is not barred by the statute of limitations, in the absence of fraud, as is the deficiency against the Fred Schneller estate. Other than fraud, the issues in the Louise Schneller estate proceeding, as set out more specifically above, are the alleged omission from the gross estate of (1) bonds of a value of $339,500, plus interest thereon accrued at the date of decedent's death of $3,446.72; *124 (2) a one-half interest in the partnership of S. Gordon & Company valued at $32,886.27; (3) a trust fund of $100,000, allegedly held by S. Gordon for the benefit of Louise Schneller's relatives, and gifts to Gordon in contemplation of death in the amount of $61,600. In his notice of deficiency respondent states that bonds of the value of $350,500 were omitted from the estate tax return. He states in his brief that on the basis of the pleadings, stipulation, concessions, and evidence there were omitted from the estate tax return 317 municipal bonds of a total value of $314,500, and 13 U.S. Treasury bonds of a value of $25,000. Without undertaking a further or more detailed analysis of the evidence of record it suffices to say that the evidence, in our opinion, does not show affirmatively that Louise Schneller was not the owner at the time of her death of municipal and U.S. Treasury bonds of a total value of $339,500 which were omitted from the estate tax return. For instance, the evidence shows that large amounts of municipal and some U.S. Treasury bonds were purchased either by Fred Schneller or by Louise Schneller in their fictitious accounts with Bohmer-Reinhart & Company and *125 by Gordon in the Mardell accounts; that some of the matured bonds and coupons from them were cashed by Louise Schneller and Gordon in those accounts, some before and some after the death of Louise Schneller; that some of the bonds were surreptitiously disposed of by Gordon after the death of Louise Schneller; and that Gordon was in virtual control of the Louise Schneller estate before as well as after her death. These facts and the circumstances under which they transpired, although failing to support respondent's determination of fraud, tend to support his determination of the deficiency in estate tax and no satisfactory explanation of them was offered by petitioners. It is not shown how Louise Schneller may have disposed of these bonds during her lifetime or how Gordon got possession of them. In our opinion petitioners have failed to produce evidence sufficient to overcome either the necessary inferences to be drawn from the proven facts or the presumptive correctness of respondent's determination. Our study of the evidence leads us to conclude that it fails to meet the burden of proof which was upon the respondent, in respect of the fraud issue, or the petitioner, in respect of *126 the deficiency in tax. Respondent's determination of the estate tax deficiency in the Estate of Louise Schneller, Docket No. 56049, is, therefore, sustained. Stanley Gordon, Transferee This leaves the question of the transferee liability of Stanley Gordon for the estate taxes due from the Louise Schneller estate. Respondent's contentions are that Gordon is liable as transferee of the following assets: 1. Bonds of the value of $339,500, plus accrued interest thereon, of $3,446.72. 2. A one-half interest in the alleged partnership of S. Gordon and Company valued at $32,886.27. 3. Cash of $100,000 held by Gordon as custodian for relatives of Louise Schneller. 4. Loans to Gordon of $98,450 which were forgiven by Louise Schneller in her will, and 5. Cash gifts to Gordon of $61,600 made in contemplation of death. Again, as to the transferee liability, the burden of proof rests upon respondent. ( Section 6902(a), Internal Revenue Code). This requires affirmative proof by respondent that there were transfers by Louise Schneller to Gordon in the manner alleged of assets of the value claimed. As to the municipal and U.S. Treasury bonds value at $339,500, *127 the evidence fails to show that Gordon was a transferee. For comparable reasons to those which caused us to find that the evidence fails to establish that the bonds were the property of decedent at the date of death and were fraudulently omitted from her estate tax return, we think that it likewise fails to establish that Gordon was a transferee of such bonds. The presumption of the correctness of respondent's determination in including the bonds in the Louise Schneller estate does not carry over to sustain his burden of proof in the transferee proceeding. Proof is also lacking either of the fact that Louise Schneller owned a one-half interest in a partnership, S. Gordon & Company, or that Gordon is liable as a transferee of such an asset. Respondent states in his brief, page 65, that "From Mrs. Schneller's statements contained in her letters, it is evident that she was placing large sums of money in the business with Mr. Gordon and that the understanding was that they were partners in this business." * * * The statements in Louise Schneller's letters to which respondent refers are those quoted above in our findings of fact. The evidence contains no further proof of the existence *128 of any partnership between Louise Schneller and Gordon. No partnership agreement or partnership records of any kind were produced. Catherine Conner who kept the books of S. Gordon & Company testified that she had no records and no knowledge of such a partnership. The company's records do show loans or advances of funds by Louise Schneller and loans to Gordon of over $98,000 which were reported in her estate tax return. In our opinion the references in Louise Schneller's letters to her friend, Jacob Smith, to "our new business" and the "50-50" split of profits falls short of prima facie proof that she ever actually owned any proprietary interest in the business of S. Gordon & Company or that any such partnership ever existed. As to this issue respondent has again failed in his burden of proof. The same can be said of the $100,000 of cash allegedly held by Gordon in custody for Louise Schneller's relatives. It is not proven that Gordon ever received this amount from Louise Schneller. Respondent's chief evidence as to this item is the statement of decedent's brother, Howard Amthauer, that he was told by Louise Schneller and by Gordon that there was such a fund. Petitioner concedes, *129 however, that there was a transfer to Gordon of $31,000 of such funds. This is the extent of Gordon's proven transferee liability with respect to this item. There is no dispute as to decedent's transfer to Gordon in her will of his indebtedness to her in the amount of $98,450. Gordon's transferee liability for the unpaid taxes of the estate extends also to that transfer. The remaining item is the cash gift or gifts of $61,600 which Louise Schneller made to Gordon in 1950, 1951, and 1952. Petitioner concedes that the gifts were received by Gordon, and, further, that the 1952 gifts of $15,600 were made in contemplation of death and are to be included in decedent's gross estate. Petitioner contends, however, that this was not true of the 1950 gifts of $38,000, and the 1951 gifts of $8,000. Petitioner states in his brief that "The gift of $15,600 made in 1952 petitioner concedes was made in contemplation of death and should be included in the estate of Louise Amthauer Schneller. However, in 1950 and 1951, the presumption that the gifts were made in contemplation of death are conclusively rebutted by the respondent's evidence that Louise Schneller was contemplating marriage. Such evidence *130 shows an intention to live rather than to die. The court must also consider the gifts were not made to relatives but to an outsider showing they were not of a testamentary nature. Likewise, gift taxes were paid on these gifts in 1950 and 1951." We cannot accept petitioner's argument that the statutory presumption that all of the gifts having been made within two years of the date of death of the donor [3] were made in contemplation of death is overcome by the evidence that Louise Schneller was considering marriage to Jacob Smith in 1952 after the date of these gifts. While Jacob Smith did testify that Louise Schneller discussed marriage with him on the occasion of their visit at Milwaukee in 1952, that fact alone is not of sufficient weight to overcome the statutory presumption that the gifts were made in contemplation of death. A discussion or even the contemplation of marriage does not necessarily negate contemplation of death. Marriage may be contemplated when, and for the very reason that, death is imminent. *131 Gordon's liability as transferee of assets of the estate of Louise Schneller as established by the evidence of record is limited to the $31,000 of funds which he admittedly received as custodian for decedent's relatives, the $98,450 of forgiven indebtedness, and the $61,600 of cash gifts in contemplation of death. Before concluding, some discussion of a motion which was taken under advisement at the hearing is appropriate. Counsel in the transferee proceedings filed the motion to dismiss the claim of the respondent against Gordon as transferee for reason that respondent does not allege that he has exhausted his remedies against the transferors, the estates of Fred Schneller and Louise Schneller, or that the estates were insolvent at the time of the transfers. It is stipulated that there is approximately $40,000 of cash still held in the estate of Louise Schneller. Obviously, the $40,000 still held in the Louise Schneller estate would be insufficient to satisfy more than a small portion of the deficiency which respondent has determined against the estate. It would, therefore, be futile for respondent first to exhaust his remedies against the estate before proceeding with his claim *132 against the transferee. This the statute does not require. Coffee Pot Holding Corp., 113 Fed. (2d) 415; U.S. v. Russell, 241 Fed. (2d) 879. In a supplemental brief petitioner cites Commissioner v. Stern, 357 U.S. 39, (S. Ct. 1047 - L. Ed. -) (Decided June 9, 1958) as a defense against Gordon's transferee liability. That case dealt with the transferee liability under section 311 of the 1939 Code of a beneficiary under a life insurance policy on the life of a deceased taxpayer for income taxes owed by him. The Court held that section 311 does not create a substantive liability but merely provides a new procedure for the collection of tax and that the existence and extent of such liability should be determined under state law. Section 827 of the Code relating to estate tax was not involved and was not discussed by the Court. Section 311 deals with the method of collecting from a transferee a "liability at law or in equity" for income taxes due from the transferor. As the Court pointed out, it does not undertake to create any liability or to define the *133 term "liability at law or in equity." Subsection (b) of section 827 clearly creates a substantive, personal liability on the "transferee, trustee, or beneficiary" for any unpaid estate taxes due from the transferor's estate, and defines the extent of such liability. There is no question here to be resolved by reference to state law, such as was the subject of the Court's ruling in the Stern case. Petitioner's motion to dismiss therefore, has been denied by a separate order. Decisions will be entered for the petitioners in Docket Nos. 56741, 56750, and 56754. Decisions will be entered under Rule 50 in Docket Nos. 56049 and 56094. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Stanley Gordon, Docket No. 56094; Estate of Fred Schneller, Deceased, et al., Docket No. 56741; Estate of Louise Amthauer Schneller, Deceased, et al., Docket No. 56750; and Stanley Gordon, Docket No. 56754.↩
2. SEC. 3612. RETURNS EXECUTED BY COMMISSIONER OR COLLECTOR. * * *
(d) Additions to Tax. - * * *
(2) Fraud. - In case a false or fraudulent return or list is willfully made, the Commissioner shall add to the tax 50 per centum of its amount. * * *↩
3. The exact dates of the 1950 gifts are not shown on the donor's gift tax return. In the column for the "date of gift" on the return there is written, "various 1950." The statutory two-year period from the date of donor's death ended April 26, 1950.↩